# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| GUARDIAN PHARMACY OF EASTERN NC, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 2:12cv00037 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| WEBER CITY HEALTHCARE n/k/a CONTINIUM CARE OF WEBER CITY, CONTINIUM HEALTH CARE MANAGEMENT LLC, and CONTINIUM OPCO, LLC, | ) | |
| Defendants. | ) | |

This matter is before the undersigned on the Motion To Transfer This Action, (Docket Item No. 8), ("Motion to Transfer"), filed by the Defendants, ContiniumCare of Weber City, LLC, ("ContiniumCare"), Continium Health Care Management, LLC, ("Management"), and Continium Opco, LLC, ("Opco"), (collectively "Defendants"), and the Defendants' Motion To Dismiss, (Docket Item No. 13). The plaintiff has responded to the motions, and the Defendants have filed replies to both motions. A hearing was held on the motions on November 26, 2012. The motions are before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). Based on the arguments and representations presented, and for the reasons stated in this Report and Recommendation, the undersigned is of the opinion that the Motion to Transfer should be denied, and the Motion to Dismiss should be granted in part and denied in part.

1

## I.  Facts

The plaintiff, Guardian Pharmacy of Eastern NC, LLC, ("Guardian"), originally filed this action against ContiniumCare, Management and Opco in Scott County Circuit Court.  On October 25, 2012, the Defendants removed the action to this court. The Complaint alleges that on July 3, 2008, Southern Pharmacy Services and Weber City Healthcare entered into a Pharmacy Services Agreement, ("Agreement"), in which Southern Pharmacy Services was required to provide medication and treatments to Weber City Healthcare based on the needs of the patients at Weber City Healthcare, a long-term care facility located in Weber City, Virginia.  The Agreement required Weber City Healthcare to pay Southern Pharmacy Services for all services rendered within 30 days following the date on which the invoices were received for the applicable billing period.  The term of the Agreement was for one year from the date of execution, and by its own terms, the Agreement could be renewed at the end of the one-year period by either written or verbal agreement of both parties 30 days prior to the expiration of the Agreement. Since the expiration of the Agreement on July 3, 2009, the successors-in-interest to both of the original signatories to the Agreement continued to operate as if the Agreement remained in effect, although no written renewal was executed, and no oral agreement was entered into.  Guardian is the successor-in-interest to Southern Pharmacy Services, and ContiniumCare is the successor-in-interest to Weber City Healthcare.  ContiniumCare is owned and operated by Management and Opco.

Charles Menten, the individual who signed the Agreement on behalf of Weber City Healthcare, conducted business with Guardian on behalf of the Defendants.  The Defendants' last payment to Guardian occurred on July 26, 2012, which paid for the March 2012 invoice.  The Defendants have not made any other

payments despite currently owing Guardian $121,516 in past due billings. More specifically, for April 2012, Guardian billed the Defendants $28,362 by invoice received on May 3, 2012. The Defendants have made no payments toward this April 2012 balance. For May 2012, Guardian billed the Defendants $29,329 by invoice received June 5, 2012. The Defendants have made no payments toward this May 2012 balance. For June 2012, Guardian billed the Defendants $33,937 by invoice received July 5, 2012. The Defendants have made no payments toward this June 2012 balance. For July 2012, Guardian billed the Defendants $32,369 by invoice received August 3, 2012. The Defendants have made no payments toward this July 2012 balance. For August 2012, Guardian provided an invoice received August 28, 2012, showing a credit in the amount of $2,480, which was used as an offset on the amount owed. The Defendants have made no additional payments toward the outstanding $121,516 balance.

The Complaint seeks $121,516 in damages against the Defendants, as well as prejudgment and postjudgment interest. Guardian also seeks reasonable attorney's fees.

The Complaint states that Guardian is a Georgia corporation with its principal place of business in Atlanta, Georgia. It further states that ContiniumCare, the successor-in-interest to Weber City Healthcare, is located in Weber City, Virginia, and is owned and operated by Management and Opco, both of which are Florida corporations. The Complaint also alleges that Charles Menten is the actual and apparent agent of ContiniumCare, Management and Opco.

On October 25, 2012, the Defendants removed Guardian's claims to this court based on diversity jurisdiction. (Docket Item No. 1.) Also on October 25,

2012, the Defendants filed the Motion to Transfer, (Docket Item No. 8), seeking to transfer the case either to the Northern District of Georgia or the Southern District of Florida,[1] and on November 1, 2012, the Defendants filed the Motion to Dismiss, (Docket Item No. 13), seeking dismissal of Guardian's claims against them for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure Rule 12(b)(2) and for failure to state a claim for relief pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). As stated above, Guardian has responded to these motions, and the Defendants have replied to both of the motions.

## II. Analysis

### A. Motion to Dismiss

#### 1. Rule 12(b)(2) Lack of Personal Jurisdiction

The Defendants argue that this court lacks personal jurisdiction over both Management and Opco[2] pursuant to Federal Rules of Civil Procedure Rule 12(b)(2). For the following reasons, I agree. It is well-settled that the plaintiff bears the burden of proving facts necessary to establish personal jurisdiction over a defendant. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Boyd v. Green,* 496 F. Supp. 2d 691, 699 (W.D.Va. 2007). When a district court decides a personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction and, in deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff. *See Carefirst*

---

[1] At the hearing on the motions, counsel for the Defendants made an oral motion to transfer the case to North Carolina, in the alternative.

[2] The Defendants do not contend that the court lacks personal jurisdiction over ContiniumCare.

Case 2:12-cv-00037-JPJ-PMS   Document 39   Filed 01/24/13   Page 4 of 30   Pageid#: 446

*of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Here, the matter is before the court on a motion to dismiss based on the pleadings. That being the case, I hold that Guardian must make only a prima facie showing of personal jurisdiction.

To determine whether personal jurisdiction exists over an out-of-state defendant requires a two-part inquiry: (1) whether a forum state's long-arm statute authorizes jurisdiction over the nonresident defendant; and (2) whether assertion of personal jurisdiction over the nonresident defendant violates due process. *See Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984); *Boyd,* 496 F. Supp. 2d at 699-701. The Virginia long-arm statute, VA. CODE ANN. § 8.01-328.1, reads in relevant part as follows: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Sportrust Assocs. Int'l, Inc. v. Sports Corp.*, 304 F. Supp. 2d 789, 792 (E.D. Va. 2004) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Two types of personal jurisdiction exist: (1) general personal jurisdiction; and (2) specific personal jurisdiction. A court exercises general personal jurisdiction when it exercises personal jurisdiction over a defendant in a suit not arising out of the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984). For general jurisdiction over a corporation to comport with due process, there must be "continuous corporate operation within a state [that is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe*, 326 U.S. at 318). Sufficient minimum contacts for the constitutional exercise of general personal jurisdiction exist where a nonresident corporation has substantial contacts with the forum state that are "continuous and systematic." *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.,* 301 F. Supp. 2d 545, 550 (E.D.Va. 2004) (quoting *Helicopteros*, 466 U.S. at 416). Specific personal jurisdiction, on the other hand, must be based on activities that "'arise [] out of' or 'relate[] to' the cause of action and can exist even if the defendant's contacts are 'isolated and sporadic.'" *Silent Drive Inc. v Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)). To exercise specific personal jurisdiction over a nonresident defendant, the defendant must have purposefully directed its activities at residents of the forum, and the claim must arise out of or relate to those activities. *See Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 660 (4th Cir. 1989).

In this case, Guardian has not alleged any facts from which the court can determine that Virginia's long-arm statute allows for the exercise of personal jurisdiction over either Management or Opco or that any such exercise of

jurisdiction would be constitutionally permissible. The Complaint admits that Management and Opco are Florida corporations. According to the Complaint, Management and Opco owned and operated ContiniumCare, a Virginia limited liability company.[3]  However, mere ownership of a corporate entity, even if that corporate entity routinely conducts business in the state, does not confer personal jurisdiction on the owner. *See Goldrick v. D.M. Picton Co.*, 56 F.R.D. 639, 642 (E.D. Va. 1971) (the doing of business of subsidiary corporation in a state does not, without more, confer jurisdiction over the nonresident parent corporation). "Standing alone, the mere existence of a parent-subsidiary relationship does not conclusively indicate that a parent is within a court's jurisdiction by way of the subsidiary's in-state activities." *Omega Homes, Inc., v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 399 (W.D. Va. 1987).

Guardian also argues that this court has personal jurisdiction over Management and Opco through their relationship with Charles Menten, whom Guardian alleges is the actual and apparent agent of all of the Defendants. Specifically, Guardian argues that Menten subjected the Defendants to jurisdiction in Virginia due to his "promises to pay for goods delivered to the Facility [located in Virginia]."  As the Defendants contend, it is Guardian's burden to state an adequate factual basis to show Menten's status as Defendants' agent. *See State Farm Mut. Auto. Ins. Co. v. Weisman*, 441 S.E.2d 16, 19 (Va. 1994) (party alleging agency relationship bears burden of proving it).  However, as Guardian has provided no factual support in its Complaint for its assertion that Menten is the

---

[3] ContiniumCare's status as a Virginia LLC is not set forth in the Complaint, but Guardian has attached to its response to the Motion to Dismiss, a Virginia State Corporation Commission Form entitled "Application For A Certificate Of Registration To Transact Business In Virginia As A Foreign Limited Liability Company" for ContiniumCare of Weber City, LLC., (Att. 1 to Docket Item No. 25).  As this matter is before the court on a Motion to Dismiss, documents outside of the Complaint may be considered in deciding the motion.

"actual and apparent agent" of all of the Defendants, any argument that this court has jurisdiction over the Defendants based upon a principal/agency theory necessarily fails.

Additionally, Guardian argues that Opco's application to do business in Virginia subjects it to jurisdiction in Virginia because:

> While Guardian recognizes that the document was executed in the name of [ContiniumCare], in filing for and seeking permission from Virginia to transact business, Defendant OPCO revealed that it was not a passive member as indicated in Mr. Klein's affidavit and that it purposefully availed itself of the laws of Virginia.

(Docket Item No. 25, Plaintiff's Memorandum In Support Of Response To Motion To Dismiss, at 10). However, Defendants have countered with affidavit testimony from Avi Klein, the sole member or manager of Opco, that Opco has never transacted business in Virginia; never maintained offices, a mailing address or telephone number in Virginia; never owned any property in Virginia; never advertised or solicited business in or into Virginia or from Virginia citizens or residents; and never contracted to provide or perform any contract within the Commonwealth of Virginia. (Attachment 2 to Docket Item No. 14, ("Klein Affidavit"), at 2). Klein further testified that Opco is only a passive holding company that owns the interest in ContiniumCare and that Opco was not involved in negotiating the Agreement that Plaintiff alleges forms the basis of its relationship with ContiniumCare. (Klein Affidavit at 2.) Klein also testified that Opco has never executed any contracts or agreements or engaged in communications with Guardian or its predecessor, Southern Pharmacy Services, nor has Opco received any goods from either Guardian or its predecessor. (Klein Affidavit at 2.) Klein testified that Opco did not promise to pay or compensate

8

Guardian or Southern Pharmacy Services for any such goods, and Opco has never operated any long-term skilled nursing facility anywhere, including Virginia. (Klein Affidavit at 3.)

Klein, through his affidavit, also testified that he is the sole member or manager of Management, which has never conducted business in Virginia. (Klein Affidavit at 3.) He testified that Management has never maintained any offices, a mailing address or phone number in Virginia; never had any agents or employees in Virginia; never owned any property in Virginia; never advertised or solicited business in or into Virginia; never advertised or solicited business from Virginia citizens or residents; and never contracted to provide or perform any contract within the Commonwealth of Virginia. (Klein Affidavit at 3.) Klein further testified that any services Management provided were provided solely from and in its Miami-Dade County, Florida, offices. (Klein Affidavit at 3.) He testified that Management does not own Continium, and he stated that Management has never operated any long-term skilled nursing facility anywhere, including Virginia. (Klein Affidavit at 4.) Klein testified that Management was not involved in negotiating the Agreement that Guardian alleges forms the basis of its relationship with ContiniumCare, and it has never executed any contracts or agreements or engaged in communications with Guardian or its predecessor. (Klein Affidavit at 4.) Lastly, Klein testified that Management has never received any goods from either Guardian or its predecessor. (Klein Affidavit at 4.)

Guardian argues that Klein did not specifically aver in his affidavit that Management did not make any promises to pay or compensate Guardian for any goods that Guardian or its predecessor might have supplied and which are the subject of the outstanding bills. However, even assuming that such a promise was

made by Management, I find that, in itself, would be insufficient to confer personal jurisdiction upon Management.

Based on the above, I find that Virginia's long-arm statute does not authorize personal jurisdiction over Opco or Management, and I find that Opco and Management do not have sufficient minimum contacts with Virginia to comport with due process requirements. That being the case, I recommend that the court grant the Motion to Dismiss Opco and Management as party defendants pursuant to Rule 12(b)(2).

### 2. *Rule 12(b)(6) Failure to State a Claim*

The Defendants also argue that, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Complaint fails to state claims against them for: (1) breach of contract; (2) detrimental reliance; (3) misrepresentation; and (4) unjust enrichment. In order to assess the Defendants' Rule 12(b)(6) argument, the court must first determine what law applies to Guardian's substantive claims. Given the recommended disposition in relation to the Defendants' Rule 12(b)(2) argument, the only remaining Defendant is ContiniumCare. The crucial question is whether ContiniumCare, as the successor-in-interest to Weber City Healthcare, and Guardian, as the successor-in-interest to Southern Pharmacy Services, are bound by the terms of the Agreement. If so, then this court must apply North Carolina law because the Agreement contains a forum selection clause specifying that it is to be governed by the laws of North Carolina. However, if the parties are not bound by the terms of the Agreement, then this court must determine, using traditional choice of law principles, what law will apply.

I find that Guardian has failed to plead facts sufficient to show that the parties are bound by the Agreement, thereby, making the action before the court one of quasi-contract. Specifically, the Agreement states that the "term of this Agreement shall be for a period of one year commencing with the execution date." (Exhibit A to Docket Item No. 1, ("Agreement"), at 1.) It further states that the Agreement may be renewed at the end of the stated period "by written or verbal agreement of both parties' 30 days prior to the end of the Agreement." (Agreement at 1.) According to the Agreement, it "shall not be assigned by either party without the prior written consent of the other party." (Agreement at 4.) Finally, pursuant to the Agreement, it "shall not be modified or amended except by written document executed by both parties … and such modification shall be attached hereto." (Agreement at 4.)

Here, the Agreement was signed on July 3, 2008, by a representative for Weber City Healthcare and by a representative for Southern Pharmacy Services. Therefore, the Agreement expired by its own terms on July 3, 2009. Counsel for Guardian conceded at the hearing that there was no written assignment, modification or amendment to the Agreement provided to the court, nor was he aware of the existence of the same. Instead, counsel for Guardian simply argued that the Agreement was ratified through the conduct of the parties to this action. However, given the lack of any written assignment, modification or amendment as required by the Agreement, I find that the parties to this action are not, in fact, parties to the Agreement, and any claim Plaintiff may have against ContiniumCare for failure to pay for goods it provided is not under a breach of contract theory, but under a quasi-contract theory.

11

Federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, Virginia is the forum state. "Although little direct guidance exists as to which choice of law principles govern quasi-contractual claims in Virginia … courts within the Fourth Circuit generally treat quasi-contractual claims as arising out of contract." *Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*, 2011 WL 1348324, at *4 (E.D. Va. Apr. 8, 2011) (citing *Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, 2010 WL 3767140 (E.D. N.C. Aug. 16, 2010); *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp.*, 299 F. Supp. 2d 505, 521 n.16 (D. Md. 2004)). The district court in *Scott & Stringfellow* agreed that contractual choice of law principles should govern quasi-contractual claims. *See* 2011 WL 1348324, at *4. I see no reason to stray from this decision, and I will apply Virginia's contractual choice of law principles in this case. The issue before the court is one of the Defendants' failure to perform. In Virginia, the performance of a contract is governed by the law of the place of performance. *See Occidental Fire & Cas. Co. of N.C. v. Bankers & Shippers Ins. Co. of N.Y.*, 564 F. Supp. 1501, 1503 (W.D. Va. 1983) (citing *Norman v. Baldwin*, 148 S.E. 831 (Va. 1929)). Under Virginia law, "[t]he place of performance of a sales contract is usually considered to be the place where goods are delivered." *Madaus v. Nov. Hill Farm, Inc.*, 630 F. Supp. 1246, 1248 (W.D. Va. 1986); *see also Anderson v. Green-Gifford, Inc.*, 2008 WL 8201362, at *1 (Va. Cir. Ct. Oct. 16, 2008). Here, the goods were delivered to the long-term care facility located in Virginia. Thus, I find that Virginia law controls whether Guardian has sufficiently plead the causes of action for breach of contract, detrimental reliance, misrepresentation and unjust enrichment against the Defendants.

12

As stated previously, the defendants argue that, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Complaint fails to state causes of action against the Defendants for: (1) breach of contract; (2) detrimental reliance; (3) misrepresentation; and (4) unjust enrichment. Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atl. Corp. v. Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. …
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their

13

veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Internal citations omitted).

Thus, for the purpose of ruling on the Motion to Dismiss for failure to state a claim, this court will assume that all well-pleaded factual allegations contained in the Complaint are true.

At the outset, the court holds that under Virginia law, no independent cause of action for detrimental reliance exists. *See W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 521 (Va. 1997) (holding that promissory estoppel is not a cognizable cause of action in Virginia); s*ee also Browning v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 1144613, at *3 (W.D. Va. Apr. 5, 2012) (stating when a cause of action is based upon a party's reliance, to its detriment, upon a misleading promise, it is a cause of action for promissory estoppel and cannot be sustained under Virginia law) (citing *Nat'l Bank of Fredericksburg v. Va. Farm Bureau Fire & Cas. Ins. Co.*, 606 S.E.2d 832, 834 n.* (Va. 2005)). Likewise, no independent cause of action for misrepresentation exists under Virginia law. *See Bay Point Condo. Ass'n, Inc., v. RML Corp.*, 2000 WL 33268342, at *8 (Va. Cir. Ct. July 18, 2000) (the Virginia Supreme Court has not recognized a separate and independent cause of action for negligent misrepresentation, and where it has been alleged, it has been so alleged only as the basis for a claim of fraud) (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998); *Mortarino v. Consultant Eng'g Servs., Inc.,* 467 S.E.2d 778, 781-82 (Va. 1996); *Jefferson Standard Life Ins. Co. v. Hendrick*, 27 S.E.2d 198, 201-02 (Va. 1943)). Therefore, I recommend that the court grant the Defendants' Motion to Dismiss insofar as it seeks the dismissal of Guardian's claims for detrimental reliance and

14

misrepresentation against the Defendants. That leaves the court to decide only whether Guardian has sufficiently stated claims for breach of contract and/or unjust enrichment, which I will discuss in turn.

With regard to Guardian's breach of contract claim against ContiniumCare, as stated earlier, neither ContiniumCare nor Guardian were original signatories to the Agreement. Furthermore, by the terms of the Agreement, any assignment thereof must have been made in writing, and any modification or amendment to the Agreement must have been made in writing and attached to the Agreement. No such written documents have been produced, and Guardian's counsel concedes that he is unaware of the existence of such documents. That being the case, I find that the only remaining Defendant in this case, ContiniumCare, and Guardian, are not bound by the terms of the Agreement and, therefore, Guardian cannot state a claim for a breach thereof. Thus, I recommend that the court dismiss Guardian's breach of contract claim against ContiniumCare.

For the following reasons, I find that Guardian has sufficiently plead its unjust enrichment claim. The equitable doctrine of unjust enrichment rests upon the idea that a man shall not be allowed to enrich himself unjustly at the expense of another. *See Kern v. Freed Co., Inc.,* 299 S.E.2d 363, 365 (Va. 1983). "To avoid unjust enrichment, equity will effect a 'contract implied in law,' requiring one who accepts and receives the services of another to make reasonable compensation for those services." *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 495 S.E.2d 478, 482 (Va. 1998) (citing *Marine Dev. Corp., v. Rodak*, 300 S.E.2d 763, 765-66 (Va. 1983); *Ricks v. Sumler*, 19 S.E.2d 889, 891 (Va. 1942); *Hendrickson v. Meredith*, 170 S.E. 602, 605 (Va. 1933)). Liability to pay for the services rendered is based on an implication of law that arises from the facts and

circumstances presented, independent of agreement or presumed intention. *See Po River Water & Sewer Co.*, 495 S.E.2d at 482 (citing *Marine Dev. Corp.*, 300 S.E.2d at 766; *Hendrickson*, 170 S.E. at 605)). The promise to pay is implied from the consideration received. *See Po River Water & Sewer Co.*, 495 S.E.2d at 482 (citing *Marine Dev. Corp.*, 300 S.E.2d at 766; *Hendrickson*, 170 S.E. at 605)).

Under Virginia law, three elements are required to establish an unjust enrichment claim: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge of the benefit by the defendant; and (3) retention of that benefit by the defendant in circumstances which would make it inequitable for the defendant to retain the benefit without reimbursing the plaintiff for the value received. *See Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990). Merely rendering services alone does not create a quasi-contract, nor is a contract implied when one officiously confers benefits upon another. *See Appleton v. Bondurant & Appleton, P.C.*, 2005 WL 517491, at *5 (Va. Cir. Ct. Feb. 28, 2005) (citing *Weitzel v. Brown-Neil Corp.*, 152 F. Supp. 540, 549 (N.D. W. Va. 1957); *United States v. Lias*, 154 F. Supp. 955, 958 (N.D. W. Va. 1957)). Further, even though a defendant may have benefitted from a plaintiff's services, the latter cannot recover unless he can show sufficient additional facts that imply a promise to pay. *See Appleton*, 2005 WL 517491, at *5 (citing *Mullins v. Mingo Lime & Lumber Co.*, 10 S.E.2d 492, 494-95 (Va. 1940)).

Here, Guardian has stated in the Complaint that it tendered goods to the Defendants in the amount of $121,516 for which the Defendants have not paid. According to the Complaint, this amount constitutes outstanding bills for goods delivered for the months of April 2012 through July 2012. Because Guardian attached the Agreement discussed herein to the Complaint, the court may consider

16

it without converting the Motion to Dismiss to a motion for summary judgment. The Agreement, although itself not binding on these parties, indicates to the court that it was medications and treatments that Guardian supplied to ContiniumCare, for which ContiniumCare has not paid. The Complaint further states that these medications and treatments were provided based on the needs of the patients at the long-term care facility. Additionally, Guardian has attached invoices sent from it to ContiniumCare specifying particular residents of the facility to whom some of these goods and services were provided. For all of these reasons, I find that Guardian has sufficiently plead the first element of an unjust enrichment claim under Virginia law.

Next, I also find Guardian has adequately plead that ContiniumCare knew of the benefit conferred upon it for a couple of different reasons. First, in the Complaint, Guardian contends that Menten, whom Guardian alleges is the actual and apparent agent of all of the Defendants, made promises to pay all outstanding invoices on multiple occasions. Additionally, Guardian states in the Complaint, and the attached invoices reflect, that the Defendants did, in fact, make a payment to Guardian in July 2012 for the March 2012 invoice, thereby demonstrating knowledge of the obligation to pay Guardian for the outstanding debt. Thus, I find that Guardian has sufficiently plead the second element of an unjust enrichment claim under Virginia law.

Lastly, I find that Guardian has sufficiently plead facts showing that allowing ContiniumCare to retain the benefit without reimbursing Guardian for the value received would be inequitable. Guardian stated in the Complaint that it provided goods and services to ContiniumCare for the months of April, May, June and July 2012, all of which are now more than 30 days past due and which total

17

$121,516. As stated above, Guardian alleges in the Complaint that it continued to deliver goods to ContiniumCare despite ContiniumCare falling behind in its obligation to pay its outstanding debt to Guardian. Guardian states in the Complaint that it continued to deliver goods to ContiniumCare despite the outstanding debt based on Menten's alleged multiple promises to pay. I find that this is sufficient to allege the third element of an unjust enrichment claim under Virginia law, namely that it would be inequitable under the circumstances to allow ContiniumCare to retain the good and services without reimbursing Guardian for the value thereof.

It is for all of the above-stated reasons that I find Guardian has sufficiently plead an unjust enrichment claim against ContiniumCare under Virginia law, and I recommend that the court deny the Motion to Dismiss on this claim.

### B. Motion to Transfer

The Defendants also have filed a Motion to Transfer, arguing that this case should be transferred to the Southern District of Florida or, in the alternative, to the Northern District of Georgia. At the hearing on the motions, defense counsel made an oral motion to transfer the case to the appropriate district in North Carolina, in the alternative. Upon questioning at the hearing on the motions, defense counsel agreed that if the court found that it lacked jurisdiction over Opco and Management, as it now has, there is no need to transfer the case to the Southern District of Florida and, while Atlanta might be more convenient for Guardian, it may not be convenient for the witnesses. However, Guardian's counsel made clear at the hearing that Guardian wishes for the case to remain in Virginia. All of that being said, I see no reason to waste any time discussing why this case should or

should not be transferred to either Florida or Georgia. I will, however, discuss transfer as it relates to North Carolina.

A motion to transfer is evaluated pursuant to the change of venue statute, found at 28 U.S.C. § 1404. According to § 1404, a civil action may be transferred to any other district where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C.A. § 1404(a) (West 2006 & Supp. 2012). The principal factors to be considered include: (1) the plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice. *See Rockingham Precast, Inc. v. Am. Infrastructure-Md., Inc.*, 2011 WL 5526092, at *2 (W.D. Va. Nov. 14, 2011) (citing *Shire LLC v. Mickle*, 2011 WL 607716, at *4 (W.D. Va. Feb. 11, 2011) (quoting *Precision Franchising, LLC v. Coombs,* 2006 WL 3840334, at *2 (E.D. Va. Dec. 27, 2006)).

The purpose of the change of venue statute is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26, 27 (1960)). The question of transferability depends on the circumstances of each case. *See Early & Daniel Co. v. Wedgefield, Inc.*, 164 F. Supp. 414 (M.D. N.C. 1958); *Stiffel Co. v. Sears, Roebuck & Co.*, 162 F. Supp. 637 (M.D. N.C. 1958). The district court has broad discretion in determining whether to order a transfer of venue. *See Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29) (1988). For the court to grant a motion to transfer based on the convenience of the parties and witnesses, the balance of convenience must weigh strongly in favor of the moving

19

party.  *See Collins v. Straight, Inc.*, 748 F.2d 916, 921-22 (4th Cir. 1984).  The party seeking a transfer cannot obtain it by bare balance of convenience in his or her favor, but must show a preponderant balance in his or her favor.  *See Dev. Co. of Am. v. Ins. Co. of N. Am.*, 249 F. Supp. 117, 118-19 (D. Md. 1966).  This court has stated that the burden is upon the movant "to disturb the plaintiff's choice of forum by showing that 'the balance of equities is in their favor [and] that judicial economy and convenience to all parties favor suit in another forum.'"  *Glamorgan Coal Corp. v. Ratners Grp., PLC*, 854 F. Supp. 436, 437-38 (W.D. Va. 1993) (quoting *Eldridge v. Bouchard*, 620 F. Supp. 678, 684 (W.D. Va. 1985)).  Courts also have held that the plaintiff's choice of forum should be given great weight, *see Collins*, 748 F.2d at 921-22;  *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), and should not lightly be set aside.  *See Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78 (4th Cir. 1967).  Unless the balance of convenience is strongly in favor of the defendant, the plaintiff's choice of forum should not, or should rarely, be disturbed.  *See Collins*, 748 F.2d at 921; *Sohns v. Dahl*, 392 F. Supp. 1208, 1217 (W.D. Va. 1975).

The court first must determine whether the proposed transferee district is one where the action might have been brought before turning its attention to the balancing of the other relevant factors.  Pursuant to 28 U.S.C. § 1391(b), the general venue statute, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …; or
>
> (3) if there is no district in which an action may otherwise be brought

20

as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For purposes of 28 U.S.C. § 1391, "residency" of a defendant with the capacity to sue and be sued in its common name, whether or not incorporated, is any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C.A. § 1391(c)(2) (West Supp. 2012). If a plaintiff, such an entity is deemed to reside only in the judicial district in which it maintains its principal place of business. *See* 28 U.S.C. § 1391(c)(2).

Here, the evidence shows that the invoices were mailed to ContiniumCare by Guardian from a Kernersville, North Carolina, address. Also, Guardian alleges that the Agreement, under the terms of which the parties had continued to operate, was administered out of North Carolina. At least arguably, then, this action could have been brought in North Carolina pursuant to the general venue statute because a substantial part of the events or omissions giving rise to the claim occurred there because payments were supposed to have been made there, but were not. However, even assuming that venue would have been proper in North Carolina, for the following reasons, I find that transfer of venue to North Carolina is not appropriate based on the convenience of the parties and the witnesses or in the interest of justice.

First, the weight to be given to a plaintiff's choice of forum depends on the connection between that forum and the cause of action. *See Coors Brewing Co. v. Oak Beverage, Inc.*, 549 F. Supp. 2d 764, 772 (E.D. Va. 2008) (citing *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 937 (E.D. Va. 2001)). Here, although Virginia is not Guardian's home forum, Virginia has a connection to the case

because the medications and treatments provided to the Defendants by Guardian, for which payments are outstanding, were for patients housed in a long-term care facility located in Weber City, Virginia, in the Western District of Virginia. Additionally, the invoices for these goods and services were sent to ContiniumCare, which is located in Weber City, Virginia. Therefore, this district undeniably has a significant connection to the cause of action currently before the court. Given these facts, Guardian's choice of forum certainly carries great weight in the transfer analysis.

Next, with regard to the factor of witness convenience and access, the court "draws a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007) (citing *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005)). "The party asserting witness inconvenience must proffer sufficient details regarding the witness and his or her testimony to allow the court to assess both the materiality of the evidence that the witness will offer and the inconvenience that will result from declining to transfer the action." *Lycos, Inc.*, 499 F. Supp. 2d at 693; *see Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003) (citing *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 667 n.16 (E.D. Va. 1998) (internal quotations omitted)). "The witness convenience factor is less important when the appearance of the witnesses can be secured without the necessity of compulsory process." *Lycos, Inc.*, 499 F. Supp. 2d at 693 (citing *Samsumg Elecs. Co.*, 386 F. Supp. 2d at 719). However, "greater weight is given to the potential inconvenience of witnesses 'whose testimony is central to a claim and whose credibility is also likely to be an important issue.'" *Lycos, Inc.*, 499 F. Supp. 2d at 693 (quoting *Bd. of Trs., Sheet Metal Workers Nat'l Fund. v. Baylor Heating & Air Conditioning, Inc.*, 702 F.

Supp. 1253, 1258 (E.D. Va. 1988)). The convenience of the witnesses is a closer issue and ultimately cannot be confidently determined from the record when neither party provides the requisite particularity about the expected witnesses and their potential testimony to accord this factor much weight. *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.,* 20 F. Supp. 2d 948, 955 (E.D. Va. 1998). Such particularized information is typically provided in affidavit form. *See Baylor Heating*, 702 F. Supp. at 1258. Additionally, where "the original forum is convenient for plaintiff's witness, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum … transfer is inappropriate because the result of transfer would serve only to shift the balance of inconvenience." *Baylor Heating*, 702 F. Supp. at 1258 (citations and quotations omitted).

Here, the Defendants have specified three witnesses who may be called upon to testify – Charles Menten, Lisa Whitney and Avi Klein. Only Avi Klein has provided an affidavit. Guardian describes Menten as Defendants'"alleged agent" who supposedly made "multiple unrequited promises over several weeks to Guardian." The Defendants argue only that Menten is a resident of Florida, who lives and works in the Southern District of Florida. Clearly, the Defendants have not provided sufficient details regarding Menten and his testimony to allow this court to assess the materiality of the evidence he would offer. Even more apparent is the total lack of any allegation that traveling to this district would impose any inconvenience on Menten. Thus, I find that the Defendants have failed to meet their burden of showing with the requisite particularity any inconvenience to Menten should the case remain in this court.

Next, the Defendants describe Whitney as the Accounts Receivable Manager for ContiniumCare, and they state that she would "be able to speak regarding such

Case 2:12-cv-00037-JPJ-PMS   Document 39   Filed 01/24/13   Page 23 of 30   Pageid#: 465

accounts receivable." They further state that Whitney lives in Florida, where she can be made available for deposition, and that it would be "excessively inconvenient" for her to travel to this court. First, I find that, again, the Defendants have failed to proffer sufficient details regarding Whitney's testimony that would allow this court to assess the materiality of the evidence she would offer. Presumably, she would be the custodian of records for ContiniumCare, but the Defendants do not state this, and no affidavit testimony has been provided. Moreover, although the Defendants state that Whitney can be made available for depositions in Florida, they do not state that she cannot be made available for depositions in this district. Lastly, while the Defendants contend that traveling to this court would be "excessively inconvenient" for Whitney, they provide no explanation as to why this is so and, as stated above, no affidavit testimony in this regard has been provided. Thus, I find that Defendants have failed to meet their burden of showing with the requisite particularity any inconvenience to Whitney if the case remained in this court.

Finally, the Defendants specify Avi Klein as a potential witness. Klein is the sole member of Opco, which is the sole member of ContiniumCare. That being the case, Klein should be classified as a party witness rather than a non-party witness. Therefore, when assessing any inconvenience to Klein that might occur if this action remains in this court, less weight will be given thereto than if he were a non-party witness. Also, party witnesses are presumed to be more willing to testify in a different forum. *See Mullins v. Equifax Info. Servs., LLC*, 2006 WL 1214024, at *7 (E.D. Va. Apr. 28, 2006). The Defendants state only that Klein is a Florida resident with his office and residence located in Miami-Dade County, Florida. They state that Klein is the manager of Opco and Management, and they surmise that if his testimony were required, it would be "regarding these entities." The

24

Defendants further conclusorily state that "travel[]ing to the Western District of Virginia would be excessively inconvenient for Mr. Klein." Again, however, as with Whitney, the Defendants have failed to proffer sufficient details regarding Klein's testimony to allow the court to assess the materiality of the evidence he would offer, and they have failed to state with the requisite particularized facts the inconvenience to him that will result if the action remains in this court. In fact, despite supplying the court with an affidavit, Klein did not testify that he would be inconvenienced in any way if this case remained in this district. Therefore, I find that the Defendants have failed to rebut the presumption that Klein, a party witness, is more willing than a non-party witness to testify in a different forum. I further find that the Defendants have failed to show with particularity any inconvenience to Klein should the case remain in this court.

Additionally, while all of these potential witnesses live outside of the subpoena power of this court, they also live outside the subpoena power of any district court in North Carolina, as well. In any event, the Defendants have not asserted that any of the potential witnesses are *unwilling* to travel to Virginia to testify absent a subpoena. *See Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D. D.C. 2002) (holding moving party must demonstrate whether witness is willing to travel to foreign jurisdiction); *see also MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 2010 WL 2757351, at *7 (W.D. Va. July 13, 2010). Furthermore, if any of the non-party witnesses were unwilling to provide live testimony, the Defendants have not explained why such live testimony is critical to this case, and why videotaped depositions or *de bene esse* depositions of such witnesses would be inadequate. *See Acterna, LLC*, 129 F. Supp. 2d at 939.

It is for all of these reasons that I find that the second factor of witness convenience and access does not weigh strongly in Defendants' favor. Therefore, I find that this factor weighs against transfer, and I recommend that the court find the same.

As for the convenience to the parties factor, the court notes that ContiniumCare is a Virginia corporation located in this district in Weber City, Virginia. Guardian supplied goods to a long-term care facility in Virginia run by ContiniumCare for the benefit of patients housed there. ContiniumCare chose to do business in Virginia as a limited liability company and, as Guardian argues, it should not now be allowed to argue that it is inconvenient to litigate a matter in Virginia based on the same business transactions that it chose to willingly undertake there. Also, while the Defendants state that no relevant documents remain in Virginia, but have been transferred to Florida, they also admit that documentary evidence may be easily transported, and this court has held that "in modern litigation, documentary evidence is readily reproduced and transported from one district to another." *See Titan Atlas Mfg., Inc. v. Sisk*, 2011 WL 3665122, at *16 (W.D. Va. Aug. 22, 2011) (citing *Generac Corp. v. Omni Energy Sys., Inc.*, 19 F. Supp. 2d 917, 923 (E.D. Wis. 1998)). Thus, I find that this factor also weighs against transfer, and I recommend that the court find the same.

Finally, I will address the interest of justice factor. This factor "encompasses public interest factors aimed at systemic integrity and fairness." *Lycos, Inc.*, 499 F. Supp. 2d at 695 (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotations omitted). "The most prominent elements of systemic integrity are 'judicial economy and the avoidance of inconsistent judgments.'" *Lycos, Inc.*, 499 F. Supp. 2d at 695 (quoting *Byerson*,

26

467 F. Supp. 2d at 635). In evaluating this factor, the court must consider such things as the pendency of a related action, docket congestion, interest in having local controversies decided at home, knowledge of applicable law, access to premises that might have to be viewed, unfairness in burdening forum citizens with jury duty, the possibility of unfair trial, the ability to join other parties, interest in avoiding unnecessary conflicts of law and the possibility of harassment. *See Lycos, Inc.*, 499 F. Supp. 2d at 695; *Koh*, 250 F. Supp. 2d at 639 (citing *Acterna, LLC*, 129 F. Supp. 2d at 940).

After weighing these considerations, I do not find that this factor weighs in favor of transfer. Because there is no other action involving these parties pending in North Carolina, there is no danger of the potential for inconsistent judgments. Furthermore, there is no reason to believe, and the Defendants have offered no evidence tending to show, that the courts in North Carolina have invested substantial time and effort into a case involving similar facts and issues so as to raise concerns regarding judicial economy. *See Samsung Elecs. Co.*, 386 F. Supp. 2d at 722. Moreover, neither party has raised any issue related to docket conditions, and this court is not aware of any issues related to the ability to join other parties, the potential for harassment or the possibility of an unfair trial. As regards the consideration of having local controversies decided in the home forum, the court finds that events leading to this cause of action took place mostly in Virginia. Particularly, the pharmaceuticals were delivered to the long-term care facility in Virginia for the use and benefit of the patients residing there. Moreover, the invoices that went largely unpaid were sent to ContiniumCare in Virginia. It is the Defendant's failure to pay these invoices that is at the heart of Guardian's case. It cannot be said that the citizens of the Western District of Virginia have no relation to this case. Stated differently, this is not a case in which the citizens of

this district would be burdened with a controversy that bears no relation to the district. Therefore, I find that this factor weighs against transfer.

Lastly, the issue of what state substantive law applies in this diversity case does not tip the scales in favor of transfer because federal courts sitting in diversity must apply the substantive law of the forum state, including its choice of law provisions. *See Klaxon*, 313 U.S. at 496. However, regardless of what substantive state law applies to Plaintiff's claims, this court is confident in its ability to adjudicate such claims, as federal courts sitting in diversity are regularly called upon to apply the law of other states.

For all of the above-stated reasons, I find that the interest of justice weighs against transfer.

In sum, the Defendants have not met their burden of showing that transfer to North Carolina is appropriate in this case. Guardian's choice of forum is entitled to great weight, and the Defendants have failed to demonstrate that the other three factors tip the scales decidedly in their favor. That being the case, I recommend that the court find that Guardian's choice of forum should not be disturbed, and I recommend that the Motion to Transfer be denied.

## PROPOSED FINDINGS OF
## FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following findings, conclusions and recommendations:

1. The Complaint fails to allege facts sufficient to establish a prima facie showing of personal jurisdiction over Management and Opco;
2. Virginia law applies to Guardian's substantive claims;
3. Virginia does not recognize claims for detrimental reliance or misrepresentation;
4. The parties are not bound by the terms of the Agreement;
5. Guardian cannot sustain a breach of contract claim against Defendants;
6. The Complaint alleges facts sufficient to state a claim for unjust enrichment upon which relief may be granted against ContiniumCare; and
7. The Defendants have failed to show that the balance of convenience to the witnesses and parties, in the interest of justice, weighs so strongly in favor of transfer to disturb Guardian's choice of forum.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends the court grant Defendants' Motion to Dismiss insofar as it seeks to dismiss the claims against Management and Opco pursuant to Rule 12(b)(2) for lack of personal jurisdiction and dismiss Guardian's claims against them.  I further recommend that the Motion to Dismiss be granted insofar as it seeks to dismiss Guardian's claims for breach of contract, detrimental reliance and misrepresentation.  However, I recommend that the court deny the Motion to Dismiss insofar as it seeks dismissal of Guardian's unjust enrichment claim.  Based upon the reasons stated herein, I also recommend that the court deny the Motion to Transfer.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in the matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

ENTER: January 24, 2013.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE